860 F.2d 884
 12 Fed.R.Serv.3d 701
 Andrew L. BROWN, Plaintiff-Appellant,
v.
UNITED STATES POSTAL SERVICE; William F. Bolger, Postmaster
General; Paul Sydney, Postmaster; Ruben Ford, Postmaster,
Fresno; U.S. Office of Personnel Management Merit System
Protection Board, Defendant-Appellee.
 No. 86-2425.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 12, 1987.
Decided Oct. 26, 1988.
 
 Alan Moss, San Francisco, Cal., for plaintiff-appellant.
 Stephen E. Alpern, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before GOODWIN, Chief Judge, FLETCHER, Circuit Judge, and KING,* District Judge.
 PER CURIAM:
 
 
 1
 Andrew L. Brown, appeals the district court's decision affirming his November, 1977 termination from his job as a window clerk at the post office for Madera, California. He was discharged for "willful failure to follow established postal procedures" and "misappropriation of postal funds." Because we find Brown's termination to be an unduly severe punishment under the circumstances, we reverse and remand.
 
 
 2
 During October and November, 1977, a number of postal inspectors observed Brown and a fellow window clerk, Laddie Lizak, mishandling postage-due transactions. In such transactions, customers purchase additional postage to receive mail that has been sent to them with insufficient postage. When the customer pays the window clerk, the clerk is instructed to affix to the mail stamps or a postal meter strip for the applicable postage due before giving the mail to the customer. The purpose of this requirement is to keep the window clerk's account accurate. Stamps from the clerk's stock go out, and cash from the customer comes in. The Postal Service requires that the clerk's cash till be in balance. See Postal Service Manual, Sec. 146.5.
 
 
 3
 The inspectors observed Brown handle 19 postage-due transactions. He correctly handled four of the transactions, involving business flats and parcels. For the other 15 transactions (fourteen of which involved forwarded magazines), totaling $21.14, Brown failed to affix postage-due stamps even though he accepted postage-due payments from the customer. When Brown's supervisor gave him a letter with 11 cents postage due, he handled the transaction correctly.
 
 
 4
 On November 14, 1977, the two observing postal inspectors interrogated Brown and obtained a sworn statement which included the following admissions:
 
 
 5
 During the past 10 months I have made mailings of Bibles and other Bible related books to Africa. On some of them I mailed paying the postage. Others were mailed with the intent of replacing the money.
 
 
 6
 I did not follow the proper procedure in handling the postage-due matter, knowing that it would be helpful in making up my being short when my stock is counted.
 
 
 7
 Based upon this statement and testimony by postal inspectors, Brown was terminated on November 14, 1977.
 
 
 8
 As a result of the same investigation, the other employee, Lizak, was fired for his failure to affix postage-due stamps upon magazines (although he, like Brown, followed the proper procedure for business flats). The review board reinstated Lizak after finding that the USPS had failed to prove that he knew the proper procedure and that he thus could not have intentionally violated them.
 
 
 9
 On May 10, 1978, the Federal Employee Appeals Authority (FEAA) upheld the USPS's decision to discharge Brown. On November 26, 1979, the office of appeals of the Merit Systems Protection Board (MSPB)--the successor to the FEAA--declined to reopen the earlier decision.
 
 
 10
 Brown filed this action in federal district court challenging his termination, seeking reinstatement, compensation for lost wages and other lost benefits, and costs and attorney's fees. The district court first referred the case to a magistrate for a recommendation pursuant to 28 U.S.C. Sec. 636(b) (1982). The magistrate recommended that Brown be reinstated. The district court agreed and entered judgment for Brown. However, on a timely motion for reconsideration by USPS, the district court reversed itself and affirmed the FEAA-MSPB decision. This appeal followed.[1]
 
 I. Jurisdiction
 
 11
 Brown argues that the district court lost jurisdiction over his case after entry of the initial judgment in his favor, and could not reverse itself and enter a new judgment in favor of USPS. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981) (holding that a court may not consider the merits of a case over which it lacks jurisdiction). However, the initial judgment was not final. It established liability, but left for subsequent decision the amount of back pay and attorneys fees. See 5 C.F.R. Secs. 550.804 (1988) (authorizing district court to compute back pay award). A district court judgment of liability is not a final judgment where it remains for the district court to assess damages or adjudicate other claims for relief. See, e.g., Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 742, 96 S.Ct. 1202, 1205, 47 L.Ed.2d 435 (1976) (declaratory judgment of liability not final where injunctive relief and damages not resolved); Hain Pure Food Co., Inc. v. Sona Food Products Co., 618 F.2d 521, 522 (9th Cir.1980) (final judgment in bifurcated tort action must include damages assessment); Warner v. Rossignol, 513 F.2d 678, 684 & n. 3 (1st Cir.1975) (same). Thus, we conclude that the district court had jurisdiction to reconsider its judgment.
 
 
 12
 Brown argues that the USPS violated Fed.R.Civ.P. 7 and Local Rule 230 of the Eastern District of California because it first raised the issue of nexus in its reply brief and oral argument in support of its March 5 motion. Therefore, he says, the district court should not have remanded the case to the magistrate for reconsideration of the nexus issue.
 
 
 13
 Fed.R.Civ.P. 7 requires that any motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought."[2] Although the USPS did not rebrief the nexus issue in its opening brief on the March 5 motion, we do not charge the district court with reversible error in considering the nexus arguments. The court had the right to consider the matter. The reference in the March 5 motion to the USPS's pending motion on nexus gave Brown some notice that the issue might be reconsidered. Because the parties had already briefed and argued the nexus issue before the magistrate, Brown was not prejudiced by his failure to brief the issue in his response to the March 5 motion. Furthermore, the district court did not reverse its decision on the nexus holding; it decided only to remand the case to the magistrate, an action which is analogous to the granting of a new trial and therefore is almost wholly given over to the discretion of the district court. See Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d193 (1980). Finally, Brown had a full opportunity to litigate the merits of the nexus issue before the magistrate and the district court. Given the policy of allowing a district judge "to reconsider the validity of his judgment" to "correct an otherwise erroneous judgment without implicating the appellate process," Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1249-50 (9th Cir.1982), we decline to hold that the district court erred in reconsidering the issue of nexus. There was likewise no abuse of discretion.
 
 II. Termination
 
 14
 Judicial review "in administrative discharge cases is limited 'to a determination that the applicable procedures have been complied with and that the dismissal was supported by substantial evidence and was not arbitrary and capricious.' " Calhoun v. Bailar, 626 F.2d 145, 147 (9th Cir.1980) (quoting Alsbury v. United States Postal Serv., 530 F.2d 852, 854 (9th Cir.)), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976), cert. denied, 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981). "An agency must first determine that the employee actually committed the conduct complained of, and second, that removal based on the misconduct will promote the efficiency of the service." McLeod v. Department of the Army, 714 F.2d 918, 920 (9th Cir.1983).
 
 
 15
 On appeal, Brown argues that: (1) the record, taken as a whole, does not provide substantial evidence supporting the finding that he intentionally violated the postal manual rule; (2) there exists no "nexus" between the alleged violation and the efficiency of the service; and (3) the penalty is so disproportionate to the alleged conduct that it amounts to an abuse of discretion.
 
 A. Substantial Evidence
 
 16
 The FEAA's decision was supported by substantial evidence. We may not displace an agency's decision "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). Determination "of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." Griessenauer v. Department of Energy, 754 F.2d 361, 364 (Fed.Cir.1985).
 
 
 17
 The charge against Brown of "willful failure to follow established postal procedures" was based on his observed mishandling of the 15 postage-due transactions. The charge of "misappropriation of postal funds" was based on two allegations: the knowing mishandling of postage-due transactions to offset shortages and withhold funds "from normal remittance channels;" and the use of postal funds for personal mailings. The FEAA officer sustained both charges, relying principally upon Brown's written confession and testimony showing that Brown sometimes had followed the proper procedure. Under our limited standard of review, these findings are supported by substantial evidence.
 
 
 18
 The conflicting testimony on whether Brown "knowingly" and "willfully" failed to follow established postage-due procedures presented the sort of question in which we defer to the trier of fact.
 
 
 19
 Brown's written confession contains the admission that "I did not follow the proper procedure in handling in the postage due matter, knowing that it would be helpful in making up my being short when my stock is counted." This statement is evidence of knowing and willful failure to follow proper procedure, and the FEAA hearing officer gave "considerable weight" to the confession. The FEAA found that the confession was corroborated by Brown's correct performance of four postage due transactions and, in particular, his correct handling of a fifth transaction when Sydney, the Officer-in-Charge of the Madera branch, was a customer.
 
 B. Nexus
 
 20
 The USPS must show that its disciplinary action "promote[s] the efficiency of the service." McLeod, 714 F.2d at 920 (citing 5 U.S.C. Sec. 7513(a)); accord Young v. Hampton, 568 F.2d 1253, 1256 (7th Cir.1977). The agency's decision on that score is entitled to respect unless it was arbitrary or capricious. Alsbury, 530 F.2d at 854. Certain on-duty misconduct may be so serious that a presumption is raised that the nexus requirement has been met. McClaskey v. United States Dept. of Energy, 720 F.2d 583, 589 (9th Cir.1983). In McClaskey, the court upheld the dismissal of an employee who deliberately covered up an act of embezzlement by fellow employees who had fraudulently used government purchase documents to acquire government material for their personal use. The court found a presumption of nexus where the "employee is dismissed for an offense involving deliberate deception" in covering up a theft. Id. Here, the Postal Service chose not to allege or prove actual theft against Brown. Brown was, however, guilty of a practice that could make theft difficult to detect. Brown knowingly failed to follow proper postal procedures. The failure involved money. While the McClaskey presumption of nexus does not by itself carry the day for the employer, it would be absurd to say that the efficiency of the service is promoted by retaining this employee at a cash register. There was no error in finding "nexus."
 
 C. Proportionality of the Punishment
 
 21
 Brown argues finally that the agency abused its discretion because the punishment imposed was disproportionate to his alleged offense. "We defer to the board's judgment unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion." McClaskey, 720 F.2d at 586 (discussing the inquiry under 5 U.S.C. Sec. 7703(c) (1982)). See Francisco v. Campbell, 625 F.2d 266, 269-70 (9th Cir.1980); Brewer v. United States Postal Serv., 647 F.2d 1093, 1098, 227 Ct.Cl. 276 (1981), cert. denied, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).
 
 
 22
 Brewer sets forth factors that should be considered in determining whether a penalty is disproportionate to the offense:
 
 
 23
 We have said that we will defer to the judgment of the agency as to the appropriate penalty for employee misconduct, unless its severity appears totally unwarranted in light of such factors as the range of permissible punishment specified by statute or regulation, the disciplined party's job level and nature, his record of past performance, the connection between his job and the improper conduct charges, and the strength of the proof that the conduct occurred.
 
 
 24
 Brewer, 647 F.2d at 1098. See also McLeod v. Dept. of the Army, 714 F.2d 918, 922 (9th Cir.1983). Although the misconduct was serious in light of Brown's duties at the cash drawer, our analysis of the other factors persuades us that Brown's termination was too harsh, particularly given that the USPS could have transferred him to non-cash handling duties.
 
 1. Range of Penalties
 
 25
 As to the first factor, the range of permissible penalties, the record is inconclusive. Hearing testimony shows that the level of punishment, in practice, is left largely to the discretion of the branch officer-in-charge. Two of Brown's former postmasters and a union official testified that dismissal is an inappropriate action of first resort for an employee with Brown's years and quality of service. Four employees at the Fresno branch were fired for mishandling postage due transactions around the same time as Brown's firing; however, another Madera window clerk who the previous year had unaccountably reported a $566 shortage, was merely reprimanded and moved to duties not involving cash-handling. The record does not indicate the circumstances of the other four who were fired, their service records, or the training provided at Fresno.
 
 
 26
 The poor training in postage due transactions at Madera also casts doubt on the appropriateness of dismissal. Section 146.5 of the Postal Service Manual set forth the procedures for handling postage-due mail. However, several witnesses testified that, prior to Brown's dismissal, no employees at the Madera post office received any formal training in the proper procedures. Instead, a new employee's training at Madera consisted of observing and getting instructions from veteran window clerks on the job. Moreover, a former Madera postmaster indicated that postage-due procedures were in a state of flux: first, employees were instructed to tear up postage due stamps; a special "call window" was set up and then abandoned; and finally, the Postal Service required window clerks to affix the proper postage. Nevertheless, at Madera, the standard operating procedure appeared to allow window clerks to tear up postage-due stamps or strips; during rush periods, according to testimony, window clerks would sometimes take the postage due money but wait until later in the day to destroy the stamps. Brown testified that his training in this procedure came by watching veteran window clerks who only loosely followed what turned out to be the proper procedure. He did not learn the proper procedure until after his dismissal.
 
 2. Job Level and Nature
 
 27
 As to the second factor, Brown did not have a high level, or supervisory job. Compare Brewer v. USPS, 647 F.2d 1093, 1098, 227 Ct.Cl. 276 (1981) (Postal Service has a right to expect higher level of behavior from managerial personnel). Although he did have considerable public contact, the public was unaware of any violation of postal rules. He was well-regarded by his customers, many of whom preferred to deal with him over other window clerks.
 
 3. Performance Record
 
 28
 This factor clearly weighs in Brown's favor: he was a 21-year veteran of the post office with a previously unblemished record. He was well thought of by fellow employees, and his two prior postmasters testified that he was one of the best, if not the best, employee they ever had supervised. In this regard, Brown's potential for rehabilitation seems high.
 
 4. Connection Between Job and Misconduct
 
 29
 In discussing the related issue of "nexus," we found it appropriate for the USPS to have removed Brown from the cash till. But this does not necessarily support his dismissal. A lesser penalty would have been sufficient. Brown could have been reprimanded and reassigned to work not involving postal funds. (Significantly, the FEAA decision held that the charges against Brown did not warrant his "emergency" dismissal, as opposed to reassignment to work not involving funds, prior to his FEAA hearing.) Such an alternative sanction was the fair one, given the lack of training and notice at Madera as to the proper procedures and penalties for violators.
 
 5. Strength of Proof of Misconduct
 
 30
 Although the FEAA decision was supportable on our deferential "substantial evidence" review, the USPS did not present a strong case. The fact that no one received training in the proper procedures corroborates Brown's claim that he did not know the procedures.[3] Brown's occasional affixing or destruction of postage-due stamps, or his doing so under observation by his supervisor--which the FEAA found as corroborating Brown's confession--does not prove that Brown knew the procedure was required in all circumstances. Brown testified that his practice was to affix or destroy the correct postage when there was no rush, and this appears to have been consistent with his training. The record does not indicate whether or not the mishandled transactions occurred during busy periods and the properly handled transactions during lulls. The hearing officer did not consider this possibility, although the testimony suggests he should have. Moreover, the record does not establish that Brown actually padded his account. Brown testified that he tore up the appropriate amount of stamps. Inspector Jennings testified that he did not see Brown do so, but admitted that Brown could have torn up stamps without Jennings seeing him.
 
 CONCLUSION
 
 31
 Based on our review of "proportionality," we REVERSE Brown's dismissal. Brown is entitled to back pay and reinstatement of employment in some capacity in the Postal Service. We REMAND this case for reconsideration of the appropriate disciplinary action consistent with this memorandum.
 
 GOODWIN, Chief Judge, dissenting:
 
 32
 I dissent from part C of the majority opinion. I realize that it is virtually impossible to fire a government employee. However, a person who proves himself untrustworthy around the cash register is not, in my view, entitled to a management search for an alternative job in another part of the plant.
 
 
 
 *
 The Honorable Samuel P. King, United States District Judge, for the District of Hawaii, sitting by designation
 
 
 [1]
 Decisions of the MSPB are now reviewed directly in the United States Court of Appeals for the Federal Circuit, pursuant to 5 U.S.C. Sec. 7703(c) (1982). Such direct judicial review is unavailable in cases which, like this, arose prior to the enactment of the Civil Service Reform Act of 1978. See Glenn v. Merit Systems Protection Board, 616 F.2d 270, 271 (6th Cir.1980) (per curiam). The standard of review set forth by Sec. 7703(c) is essentially that which is dictated by cases in this circuit. See Alsbury v. United States Postal Serv., 530 F.2d 852, 854 (9th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976)
 
 
 [2]
 Brown argues that Local Rule 230(d) dictates the content of reply briefs. Local Rule 230(d) provides that "[n]ot later than 7 days preceding the date of hearing, the moving party may serve and file in duplicate a reply to any opposition filed by a responding party." However, the term "opposition" in Local Rule 230(d) must be interpreted in light of Local Rule 230(c), which designates as "opposition" the nonmoving party's response to a motion; Local Rule 230(d) thus does not regulate the content of the brief
 
 
 [3]
 In the case of Laddie Lizak, the other window clerk fired for mishandling postage due transactions, the same FEAA officer found the poor training at Madera to have a significant bearing on the issue of Lizak's claimed lack of knowledge of the procedures