## In re NEW YORK ASBESTOS LITIGATION.

**John Consorti, Alfred Luchnick, Peter Pulizzi, Vincent Tabolt, Plaintiffs.**

Nos. 92 CIV. 6377 (RWS), 92 Civ. 7283 (RWS), 92 Civ. 2402 (RWS) and 92 Civ. 0763 (RWS).

United States District Court, S.D. New York.

Feb. 24, 1994.

Levy Phillips & Konigsberg, New York City by Robert I. Komitor, Moishe Maimon, for plaintiffs.

McCarter & English, Newark, by Richard P. O'Leary, for defendant Keene Corp.

Flemming, Zulack & Williamson, New York City, by Cynthia B. Rubin, for defendant Flintkote Co.

Hinckley & Silbert, P.C., New York City by Craig F. Wilson, for defendant Owens–Corning Fiberglas Corp.

Gladstein & Isaac, New York City by Peter L. Herb, for defendant Veteran's Pipe Covering.

Lester Schwab Katz & Dwyer, New York City by Cynthia Weiss Antonucci, for defendant Fibreboard Corp.

Winick & Rich, P.C., New York City by Abraham Y. Skoff, for defendant Atlas Turner, Inc.

Anderson Kill Olick & Oshinsky, P.C., New York City by Jennifer W. Darger, Margaret A. Weiner, Whiteford, Taylor & Preston, Baltimore, MD by Warren Weaver, for defendant Porter Hayden Co.

## OPINION

SWEET, District Judge.

The parties in these cases, which were consolidated for trial, have submitted proposed judgments and orders in accordance with this Court's opinion of January 21, 1994, reported at 1994 WL 21140 (S.D.N.Y. Jan. 21, 1994) (the "January 21 Opinion"). The proposed orders and judgments of the various parties differ in certain respects, which differences are resolved below.

### Facts, Parties, and Prior Proceedings

The facts, parties, and prior proceedings in these cases have been fully recounted in prior opinions of this Court, familiarity with which is assumed. *See, e.g., In re New York Asbestos Litig.*, 847 F.Supp. 1086 (S.D.N.Y. 1994); *In re New York Asbestos Litig.*, 149 F.R.D. 490 (S.D.N.Y.1993); *In re New York Asbestos Litig.*, 145 F.R.D. 644 (S.D.N.Y. 1993).

Special Verdicts were rendered in these cases seriatim on July 22, 23, and 24, 1993, after which post trial motions pursuant to Rule 50(b) of the Federal Rules of Civil Procedure were made September 14. These

motions and issues related to judgment molding were addressed in the January 21 Opinion. On February 9, 1994, this Court heard argument on the implementation of the rulings contained in the January 21 Opinion. The parties thereafter submitted additional papers to the Court, and the present motions were considered fully submitted as of February 18, 1994.

### Discussion

Plaintiffs have submitted proposed judgments to be entered pursuant to Fed. R.Civ.P. 54(b) in the *Luchnick*, *Pulizzi*, and *Consorti* cases. Rule 54(b), Fed.R.Civ.P. ("Rule 54(b)") provides that:

> When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The determination of whether there is just reason for delay within the meaning of Rule 54(b) is committed to the discretion of the district court. *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8–10, 100 S.Ct. 1460, 1465–66, 64 L.Ed.2d 1 (1980); *see also Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir.1992); *Ginett v. Computer Task Group*, 962 F.2d 1085, 1092 (2d Cir. 1992).

The Second Circuit has held that Rule 54(b) motions should be granted "only where there are interests of sound judicial administration and efficiency to be served, or, in the infrequent harsh case, where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Hogan*, 961 F.2d at 1025 (citations omitted).

■ All claims of all parties in the *Luchnick* and *Pulizzi* cases have been resolved. The defendants urge that final judgment may not be entered in these cases until outstanding issues in *Consorti* and *Tabolt* have been resolved.

In *Hageman v. City Investing Co.*, 851 F.2d 69 (2d Cir.1988), the Second Circuit considered whether, in a consolidated action, a judgment that did not dispose of all claims was a final decision subject to appeal under 28 U.S.C. § 1291 [1] absent certification under Rule 54(b). Although the Plaintiffs request certification of the *Pulizzi*, *Luchnick*, and *Consorti* judgments under Rule 54(b), *Hageman* indicates that the nature and extent of consolidation is an important determinant of whether an appeal of fewer than all issues in a consolidated action is appropriate. *See Hageman*, 851 F.2d at 71 (stating that district court is better able than appellate court to decide when interim appeal in consolidated action is appropriate because district court is familiar with purpose and type of consolidation, and refusing to establish *per se* rule against interim appeals in consolidated actions because of infinite variety of consolidated actions that can arise).

In *In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439 (1st Cir.1972), the First Circuit considered a case in which several actions were consolidated for pre-trial procedures and for trial in the District Court for the District of Massachusetts. On appeal, the circuit court considered whether they had jurisdiction to hear the cases for which Rule 54(b) certification had not been entered.

The court considered the fact that separate complaints were filed or removals effected of separate state court actions in each of the cases, and that separate judgments were entered in each of the five cases to find that judgments in these cases were appealable even absent the Rule 54(b) certification.

By Opinion this Court of February 17, 1993, these cases were consolidated for purposes of trial. *See In re New York Asbestos Litig.*, 145 F.R.D. 644, 657 (S.D.N.Y.1993). Each case retained its own Civil Action number, and each case received its own separate verdict, which related solely to that case and purported to dispose of all issues related to that case. There is, therefore, no just reason

---

1. Under 28 U.S.C. § 1291, a Court of Appeals has jurisdiction to consider appeals "from all final decision of the district courts of the United States."

to delay entry of final judgment in the other cases.

In addition, in the January 21 Opinion, this Court held that there must be a new trial with regard to the liability of defendant Armstrong in *Tabolt*, and with regard to Mrs. Consorti's noneconomic damages for future loss of consortium. *In re New York Asbestos Litig.*, 847 F.Supp. at 1099, 1106 (S.D.N.Y. 1994). Entry of judgment in the *Tabolt* and *Consorti* cases is therefore impossible at this time. It would cause both hardship and injustice to allow the impossibility of entering judgment in the *Tabolt* and *Consorti* cases to delay entry of judgment in *Luchnick* and *Pulizzi*. Certification under Rule 54(b) of these judgments is therefore appropriate.

■ *Consorti* stands on a different footing from that of *Luchnick* and *Pulizzi*. The January 21 Opinion held that a new trial was required on the issue of Mrs. Consorti's noneconomic damages for future loss of consortium because the jury's finding on this issue was so strongly against the weight of the evidence as to constitute a seriously erroneous result. *In re New York Asbestos Litig.*, 847 F.Supp. at 1106 (S.D.N.Y.1994).

In *International Controls Corp. v. Vesco*, 535 F.2d 742 (2d Cir.1976), the Second Circuit heard an appeal from an order of this Court which permitted execution against corporate assets on default judgments which had been entered against the individual who owned and controlled the company. The trial judge had originally entered two default judgments against the defendant, the first establishing liability (the "October 5 Order") and the second specifying an amount of damages but leaving open the possibility that the plaintiff could prove further damages in subsequent proceedings (the "July 12 Order"). The trial judge subsequently issued an order authorizing the plaintiff to satisfy its judgments against the corporate assets.

The defendants argued on appeal that the order allowing execution of the October 5 Order and the July 12 Order was improper because these two orders were not "final." The October 5 Order contained a Rule 54(b) certification, but the July 12 Order did not, which raised a question of whether the certification contained in the October 5 Order was intended to apply to both.

The Circuit Court held that, even if Rule 54(b) certification were not ambiguous, the July 12 Order could not be a proper subject of a Rule 54(b) certification because it left open the question of additional damages, stating that "the district court may utilize its Rule 54(b) powers with respect to a given claim only if all damages stemming from that claim have been fixed ... claims on which [the plaintiff] is still free to prove additional damages may not be subject to a ... Rule 54(b) certification." *International Controls Corp.*, 535 F.2d at 748–49.

Until the noneconomic damages for Mrs. Consorti's future loss of consortium are determined, therefore, the verdict in *Consorti* can not be subject to a Rule 54(b) certification. In addition, because Mrs. Consorti's noneconomic damages for future loss of consortium are not determined, it is impossible to determine the exact amount of other elements of damages in *Consorti*. Pursuant to N.Y.C.P.L.R. § 5041(b), judgment must be entered for the first two-hundred-fifty-thousand dollars of future damages awarded in *Consorti*. This amount must "include the elements of future damages in the same proportion as such elements comprise of the total award for future damages as determined by the trier of fact." Until Mrs. Consorti's noneconomic damages for future loss of consortium are determined, it is impossible to determine what portion of this two-hundred-fifty-thousand dollar judgment to deduct from the other elements of future damages.

The entry of judgment in *Consorti* must await trial to determine Mrs. Consorti's noneconomic damages for future loss of consortium. This trial shall be set for April 2, 1994.

### Scope of Trial Relating to Armstrong's Liability

■ The January 21 Opinion explained that, as a prior step in establishing liability, the jury in *Tabolt* found that asbestos-containing products of Armstrong World Industries ("Armstrong") were a proximate cause of Tabolt's mesothelioma under an instruc-

tion that a product must have been a substantial contributing factor in bringing about injury to establish proximate cause. Thereafter, the jury assigned a 0% of relative responsibility to Armstrong. Since these answers were irreconcilable, a new trial as to the issues left unresolved by the jury in *Tabolt* was ordered. *See In re New York Asbestos Litig.*, 847 F.Supp. at 1099 (S.D.N.Y.1994).

Flintkote and Tabolt differ as to whether the new trial must be limited to whether exposure to Armstrong products was a proximate cause of Tabolt's mesothelioma and, if so, what is Armstrong's relative share of liability, or whether the relative fault findings made by the first jury must be discarded and all relative shares of fault determined in a new trial.

According to Flintkote, the new trial must encompass a complete reassessment of relative shares of liability because the Special Verdict Form used in the trial of the *Tabolt* case did not list all of the entities with whom the plaintiff had settled. On June 30, 1993, before the plaintiff had rested, the Court directed counsel for plaintiff to disclose the identities of the settled defendants to Flintkote and the other defendants remaining at trial. (Tr. at 1109–10 6/30/93.) There is a dispute among the parties regarding the extent to which plaintiffs' counsel complied with this directive.

The Court need not determine the extent of plaintiffs' counsel's compliance, however. N.Y.C.P.L.R. § 1601(1) provides that when a plaintiff wins a suit for personal injuries against multiple tortfeasors, each tortfeasor who is 50% or less responsible for the plaintiff's injuries is not liable for more than its assessed share of noneconomic damages. This provision creates an incentive for defendants to prove the liability of all possible joint-tortfeasors, whether they had settled or not. The defendants claimed that they were entitled to the protections provided by Section 1601, an issue that was addressed in the January 21 Opinion. *In re New York Asbestos Litig.*, 847 F.Supp. at 1109 (S.D.N.Y. 1994). The jury was instructed that the defendants were entitled to attempt to prove that other entities besides themselves were responsible for the mesotheliomas in these cases. (Tr. at 4498–4500.)

Because of this potential for reducing its own share of liability for noneconomic damages by demonstrating the fault of other parties, Flintkote had a substantial incentive to prove the liability of as many tortfeasors as possible, regardless of whether or not they had settled with the plaintiffs. Flintkote was aware of this incentive and acted upon it. (*See* Flintkote New Trial Mem. at 61; Flintkote New Trial Rep.Mem. at 25–27.) It must be assumed that they brought proof against all parties to whom their proofs were relevant even if they were not aware of the identity of all of the entities with whom the plaintiffs had settled.

As to a *de novo* evaluation of the relative shares of fault of all liable parties, Rule 59(a), Fed.R.Civ.P., permits partial retrial of distinct issues, if it appears that the issue to be retried is so distinct and separable from others that a trial of it alone "may be had without injustice." *Akermanis v. Sea–Land Serv., Inc.*, 688 F.2d 898, 906 (2d Cir.1982) (quoting *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931)), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983), *and cert. denied*, 464 U.S. 1039, 104 S.Ct. 700, 79 L.Ed.2d 165 (1984).

In *Akermanis*, the Second Circuit considered an appeal from a trial in this Court of claims under the Jones Act. The jury had found the plaintiff contributorily negligent for 4% of his damages. The trial judge remitted this percentage allocation of liability, allowing the plaintiff to chose between accepting a finding of 25% contributory negligence or submitting to a new trial.

The Second Circuit held that a trial court would not use the device of a new trial order conditioned on remittitur to increase a jury's determination of percentage allocation of negligence, and remanded the case for a determination of whether a new trial was necessary. If the trial judge found that a new trial was necessary, the Second Circuit held that such trial could be limited to the question of contributory negligence, "both its

existence and its percentage." The decision whether to so limit the trial was, the Circuit court asserted, to be based on a consideration of fairness to the parties. *Akermanis,* 688 F.2d at 907.

The court went on to explain that:

If this procedure [of limiting the trial to the issue of the existence and percentage of contributory negligence] were used, the jury would be told that defendants' negligence has already been determined and that their task is only to determine whether the plaintiff was contributorily negligent and, if so, to determine what percentage of responsibility for the accident is attributable to the plaintiff's contributory negligence. The parties would, of course, be entitled to present all evidence relevant to the fault of both parties in order for the jury to make an apportionment of fault.

*Id.* at n. 6.

The solution suggested by the Second Circuit in *Akermanis* is the one that will be adopted in this case. The new trial in *Tabolt* shall be limited to the question of whether Armstrong's products were a proximate cause of Tabolt's death and, if so, to determine what percentage of responsibility is attributable to Armstrong. Both parties will be entitled to present all evidence relevant to the fault of all adjudged tort-feasors in order for the jury to make an apportionment of Armstrong's fault.

If the jury attributes a share of liability to Armstrong on retrial, total shares of allocated responsibility for Tabolt's damages will exceed 100%.[2] This will not pose a problem for either the jury or the Court. Armstrong's percentage of relative liability, if any, will be expressed as an individual fraction of 100%. Any allocation of a share of liability to Armstrong will result in an excess allocation on liability. This excess will be distributed among the remaining culpable parties by deducting their aliquot share of Armstrong's percentage from each of their

percentages as allocated by the jury in the first trial.

This procedure is supported by the case law of this Circuit. In *In re Eastern & Southern Districts Asbestos Litigation,* 772 F.Supp. 1380, 1405–06 (E.D.N.Y.1991), *aff'd in relevant part and rev'd in part,* 971 F.2d 831 (2d Cir.1992), the jury apportioned a share of liability to defendant Flintkote even though the case against it had been dismissed at trial. To correct for this error of the jury, the Flintkote share of liability was reallocated among all the culpable parties.

In *In re Joint Eastern & Southern Districts Asbestos Litigation,* 124 F.R.D. 538 (E.D.N.Y.1989), *aff'd,* 899 F.2d 1281 (2d Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990), after the verdict in a jury trial of asbestos related personal injury cases but before entry of judgment, the Court learned that one defendant, Celotex, to whom the jury had assigned a percentage share of liability, had never been named or served as a defendant.

The defendants argued against dropping Celotex as a defendant under Fed.R.Civ.P. 15(a) on the grounds of prejudice, claiming that "the jury ha[d] apportioned liability among several parties including Celotex, and that the Court would have no way of envisioning what verdict the jury would have reached had Celotex not been a defendant in the trial." *Asbestos Litig.,* 124 F.R.D. at 542–43. The court rejected this argument, holding that Celotex's proportionate responsibility would be distributed among the other responsible parties in proportion to the fault that the jury found. *Id.* at 543.

In these asbestos cases, trial judges solved the problem of unallocated shares of liability by distributing that liability among the other culpable parties by aliquot share. In the present case, Armstrong's share of liability, if any, will be subtracted from the shares of the other culpable parties by aliquot share. The problem of the jury's potentially finding

---

**2.** The same possibility existed under the suggested retrial in *Akermanis.* The jury in the first trial there found the plaintiff's contributory negligence to be responsible for 4% of his damages, making the defendants 96% liable. If, on retrial, the jury found that the plaintiff's negligence was

responsible for 25% of his damages, as the trial judge felt was appropriate, *see Akermanis,* 688 F.2d at 901, the two juries would have allocated 121% total responsibility for the plaintiff's injuries.

more than 100% liability for Tabolt's injuries will, therefore, be resolved consistently with the case law of this circuit.

Flintkote cites no controlling cases for the proposition that a trial limited according to the preceding discussion would be improper. In addition to not being controlling, the cases cited by Flintkote do not suggest a different result. *Gannon v. City of New York,* 57 A.D.2d 538, 394 N.Y.S.2d 5 (1977) involved several negligence actions against a variety of defendants for wrongful death, personal injury, and property damage arising out of a gas explosion. The explosion was largely the result of a series of improper actions by the proprietors of a restaurant, China Dynasty. *See Gannon Personnel Agency, Inc. v. City of New York,* 103 Misc.2d 60, 425 N.Y.S.2d 446 (N.Y.Sup.1979).

The trial court charged the jury that it must apportion fault among the defendants and that the percentage must total 100%. The court also, however, specifically excluded China Dynasty from the term "defendants," presumably because it was judgment proof. The appellate division required a new trial on the allocation of liability, since the liability of the defendants other than China Dynasty could be altered by a failing to assess China Dynasty's share of responsibility and thereafter dividing that share among the other defendants in relation to their proportionate shares of the remaining liability.

In *Gannon,* therefore, a judgment-proof defendant was improperly excluded from the jury's consideration of apportionment of liability. This defendant was the "principle tortfeasor," *see Gannon,* 103 Misc.2d at 63, 425 N.Y.S.2d 446, and, in fact, on retrial, the jury apportioned 80% of the liability to China Dynasty. *Id.* at 62, 425 N.Y.S.2d 446. It is understandable that the court could have found that excluding this major defendant from the jury's consideration and requiring the jury to make the allocations of liability sum to 100% could have so distorted the jury's deliberations as to require a new trial on apportionment.

In *Lundgren v. McColgin,* 96 A.D.2d 706, 464 N.Y.S.2d 317 (1983), the jury's answers to written interrogatories regarding one defendant's liability under a negligence theory was inconsistent with the jury's answer to an interrogatory submitted to the jury with regard to the same defendant's liability under a strict liability theory. The court granted a new trial against all defendants, stating that this was required in the interests of justice and fairness because the verdict apportioned liability among the defendants.

The recitation of the facts in *Lundgren* is too sparse to provide a full grasp of the premises underlying this conclusion. However, to the extent that *Lundgren* was decided correctly under New York law, it appears that the court's conclusion is the result of the application of the same fairness standard applied by the Second Circuit in *Akermanis.* That the application of that standard to the facts of *Lundgren* lead the New York Appellate Division to conclude that a new trial for all defendants was required is not in conflict with the fact that, in the present case, fairness would be promoted by limiting the trial in *Tabolt* to the issues of the existence and percentage of Armstrong's liability. The Court has considered the cases cited by Flintkote from state courts from Louisiana, Massachusetts, Kansas, New Jersey, and California, and finds them unconvincing in light of the specific precedent on this issue from this federal circuit.

### Conclusion

For the reasons discussed above, judgment shall be entered in the *Pulizzi* and *Luchnick* cases pursuant to Rule 54(b). The retrial in the *Tabolt* case shall be limited to the issue of the existence and percentage of Armstrong's liability, as described above. The retrial in the *Consorti* case shall be held on April 4, 1994.

It is so ordered.