**Theodore STOMA, Plaintiff,**

v.

**MILLER MARINE SERVICES, INC., Defendant.**

No. CV 01–1843(ADS)(ARL).

United States District Court, E.D. New York.

July 18, 2003.

Tabak & Mellusi by Sheldon Tabak, Esq., Ralph J. Mellusi, Esq., New York City, for Plaintiff.

Badiak Will & Ruddy, LLP by Patrick J. Corbett, Esq., New York City, for Defendant.

**MEMORANDUM OF DECISION AND ORDER**

SPATT, District Judge.

Theodore A. Stoma ("Stoma" or the "plaintiff") moves for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59 on the issue of contributory negligence.

**I. BACKGROUND**

The Court presumes familiarity with the facts and circumstances giving rise to the

plaintiff's motion. On May 15, 2003, following a six-day jury trial, a verdict was returned in favor of the plaintiff. In its verdict, the jury found that under the Jones Act, 46 U.S.C.S.App. § 688, defendant Miller Marine Services, Inc. ("defendant") was negligent with regard to the plaintiff's injuries on November 10, 1998. In addition, the jury found that the plaintiff was 90% contributorily negligent in causing his own injuries. The jury awarded Stoma damages in the sum of $190,000, which would be reduced to the sum of $19,000 based on the jury's finding that the plaintiff was 90% contributorily negligent.

After the verdict, the plaintiff made this motion for judgment as a matter of law to set aside the jury's finding that the plaintiff was contributorily negligent, or, in the alternative, for a new trial on the issue of contributory negligence.

## II. DISCUSSION

### A. Rule 50(b)

Stoma moves pursuant to Rule 50(b) for judgment as a matter of law on the ground that a reasonable jury could not have concluded that there was contributory negligence based on the evidence presented. In considering a Rule 50 motion, the court must decide "whether the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir.1998) (citations and quotations omitted). Rule 50(b) provides:

"If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The

movant may *renew* its request for judgment as a matter of law. . . ."

Fed.R.Civ.P. 50(b) (emphasis added).

Here, the defendant correctly argues that Stoma is barred from challenging the sufficiency of the evidence because he failed to move for judgment as a matter of law at the close of the evidence in accordance with Rule 50(b). It is well-established that in order to challenge the sufficiency of the evidence on an issue under Rule 50(b), the plaintiff must timely move for judgment as a matter of law on that issue. *See Queenie, Ltd. v. Nygard International*, 321 F.3d 282, 289 (2d Cir. 2003) (citing *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir.1998)). It is undisputed that Stoma failed to move for judgment as a matter of law "before submission of the case to the jury." Fed. R.Civ.P. 50(a)(2). Thus, the plaintiff may not post-verdict seek the benefit of a judgment as a matter of law under Rule 50(b). *Walling v. Holman*, 858 F.2d 79, 82 (2d Cir.1988) (citing *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816 (2d Cir.1970)). Accordingly, the plaintiff's Rule 50(b) motion is denied.

### B. Rule 59

In the alternative, the plaintiff requests a new trial on the issue of contributory negligence under Rule 59. At the outset, the Court rejects the defendant's argument that the plaintiff's motion for a new trial is not ripe because judgment has not yet been entered. Rule 59(b) provides that "[a]ny motion for a new trial shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59. The Court agrees with the plaintiff that the provision merely provides the maximum limitation for making the motion and does not preclude the plaintiff from making a motion for a new trial before entry of a judgment. Moreover, as noted by the

plaintiff, after the verdict, the parties consented and the Court ordered that post-trial motions be made at that time.

The decision whether to grant a new trial following a jury trial under Rule 59 is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). "This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Textile Deliveries, Inc. v. Stagno*, 52 F.3d 46, 49 (2d Cir.1995). Unlike a judgment as a matter of law under Rule 50(b), even if substantial evidence exists to support the jury's verdict, a court has the power to grant a new trial under Rule 59. *See Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992).

In general, a motion for a new trial should not be granted unless the court is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.* 252 F.3d 608, 623 (2d Cir.2001). In determining whether the jury reached a "seriously erroneous" result, the district court "is free to weigh the evidence and 'need not view [the evidence] in the light most favorable to the verdict winner.'" *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir.2002) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir.1998)).

■ In the Court's view, the jury's finding that Stoma was 90% contributorily negligent constituted a clear and serious error warranting a new trial. *See Akermanis v. Sea–Land Serv., Inc.*, 521 F.Supp. 44, 51 (S.D.N.Y.1981), *rev'd on other* grounds, 688 F.2d 898 (2d Cir.1982) (holding jury's contributory negligence allocation of only 4% to plaintiff was seriously erroneous and warranted a new trial). At the trial, the jury was given the following instruction on the concept of contributory negligence:

I have already explained that you may find the defendant liable to the plaintiff if it negligently failed to provide the plaintiff with a safe place to work, a reasonably safe outside hatch door in the deckhouse and adjacent stairs to walk on, or was otherwise negligent, and if such negligence played a part, even the slightest in causing the plaintiff's injuries.

In this case, the defendant contends that the plaintiff's injuries were due to his own negligence. This is referred to as "contributory negligence." However, if you find that the plaintiff was negligent under the standards that I will describe, that does not prevent the plaintiff from recovering damages if you find that the defendant's negligence also played a part in causing his injuries. Rather, such conduct on the part of the plaintiff would result in a reduction of the plaintiff's damages in proportion to the amount of negligence attributable to him, as I will explain shortly.

In considering the question of the plaintiff's contributory negligence, if any, account must be made for the duties of a seaman. Generally speaking, it is the duty of the seaman to do the work assigned; it is not the duty to find the safest method of doing it, or to devise a safer method. Thus, the plaintiff cannot be found contributorily negligent based solely on the fact that he was working at a potentially dangerous job or area. Rather, you may find the plaintiff contributorily negligent only if the defendant has established, by a preponderance of the evidence, that the plaintiff did not exercise slight care for his own protection, such as by failing to exercise a careful lookout or by walking on or

using the outside hatch door on the deckhouse and the adjacent stairs area in a careless manner, under the circumstances then existing.

During the trial, James Miller, President of Miller Marine Services, Inc., testified that a person would enter from the aft deck to the passenger cabin of the vessel through a hatch door which is a watertight door. Miller described the hatch door as having two dogs or swivel latches on the right side of the door as one faced aft from the inside of the craft. Miller testified that there were no handles or grasps on the door and explained that in order to close the hatch, a person would hold onto the sill or the frame of the door or hold onto the dog on the right side.

Furthermore, Miller testified that the hatch door was at a slight angle facing forward when it was closed. Miller stated that opening the door from this aft deck, the top of the door was tilted forward and that there was a 6 or 8-inch coaming or ledge at the bottom of the door. Miller also stated that after one opened the hatch door two aluminum steps were located on the inside and that there were raised diamond plate on the steps. Miller testified that if it was raining, the rain would come through the hatch door and onto the steps below the door. In addition, Miller stated that although he had instructed a crew member to put non-stick tape on the steps prior to November 10, 1998, he never actually looked at the steps to verify whether his instructions had been followed.

Another witness for the defendant, Roy Scott, testified that he was hired to examine the vessel and interview the plaintiff. Scott stated that he examined the entranceway and surrounding areas of the rear hatch door going into the passenger cabin. According to Scott, an examination revealed that the hatch was 30 inches wide and that the outer deck was 6 inches below the coaming at the base of the hatch door

when it was closed. Also, there was an 11 inch step down to the first step. Based on his measurements, Scott stated that the dimensions from the top of the coaming to the first step was 17 inches. Scott verified that there was no handhold device in the area of the hatchway.

In describing the November 10, 1998 accident, Stoma testified that after he noticed that it was raining, he went onto the wet aft deck to close the hatch door. The plaintiff testified that because the hatch was open, rain was entering into the rear hatch and onto the aluminum diamond steps. The plaintiff explained that to unhook the hatch door, he grabbed the top dog, swung it, and stepped in with his left foot first onto the top step. The plaintiff testified that when he was attempting to close the hatch, he was holding onto the top dog and that while he was closing the hatch, he lifted his right foot over the coaming. Stoma stated that when he put his left foot on the second step, he slipped. The plaintiff testified that he was holding on to the top dog for a couple of seconds as he began to slip and that he slipped off the steps once the hatch was in the closed position. Stoma testified that there were no handrails for the plaintiff to hold onto by the hatch door or the steps and that there were no non-stick pads on the aluminum steps.

On cross-examination, Stoma was asked whether it was part of his job to keep the boat clean. Stoma answered in the affirmative but said that when he initially cleaned the boat, it was not raining. He further stated that when he went to close the hatch door, there was water on the steps. Stoma was asked why he had not cleaned the water before closing the hatch door, and he answered that because it was raining, it would continue to get wet. Also, when confronted by his deposition

testimony, the plaintiff conceded that he did not "hang" from the hatch dog.

In the Court's view, the trial record supports the plaintiff's contention that the jury's finding that Stoma was 90% contributorily negligent was clearly against the weight of the evidence and the testimony which had been presented to them. James Miller testified that based on the angle of the hatch door, rain would get inside and fall on the steps if the hatch was open. In addition, Miller could not verify that the non-stick tape was on the steps the day of the incident, and the testimony of Miller and Roy Scott revealed that there were no handrails in the area of the hatchway.

Furthermore, the plaintiff testified that when he noticed the rain, he went to close the rear hatch and did not clean the water before closing the hatch because it would continue to get wet due to the rain in the open hatch door. Based on the evidence and testimony at trial, it is clear that this was an awkward and difficult hatch door to handle and use. One entering from the aft deck had to hold onto the dog latches or the edge of the door, swing the door open behind the person, and hold it open when descending the steps which were distanced from the edge of the hatch door. Not only was the door cumbersome to use, but in the rain, when the raised diamond plate aluminum steps were wet and slippery, it created a somewhat hazardous entranceway. In addition, as previously noted, the Court instructed the jury:

> Generally speaking, it is the duty of the seaman to do the work assigned; it is not the duty to find the safest method of doing it, or to devise a safer method. Thus, the plaintiff cannot be found contributorily negligent based solely on the fact that he was working at a potentially dangerous job or area.

Therefore, the Court finds that no reasonable jury could find that the plaintiff was 90% at fault in causing this accident.

On the other hand, the jury's verdict that the defendant was negligent in regard to the plaintiff's injury at the hatch door, adjacent stairs, and entranceway area, is fully supported by the evidence.

■ Notably, this presents an interesting situation. The jury verdict that the plaintiff was contributorily negligent to the extent of a 90% apportionment must be set aside. In that regard, there must be a new trial solely on the issue of apportionment liability between the plaintiff and the defendant. With regard to an excessive compensatory damage verdict, the "remittitur" procedure is often used. In the event of an excessive verdict, the Court may order a new trial on damages without qualification or make it conditional on the plaintiff's refusal to agree to a reduction, otherwise referred to as, a remittitur. *See, e.g., Bender v. City of New York,* 78 F.3d 787, 795 (2d Cir.1996) ("we might well have ordered a new trial unless [the plaintiff] agreed to a very substantial remittitur."); *Textile Deliveries Inc. v. Stagno,* 52 F.3d 46, 49 (2d Cir.1995) ("if plaintiffs . . . agree to remit all damages in excess of $258,254, we will affirm a judgment in that amount. If the plaintiffs refuse to make such remittitur, we direct that the case be retried solely on the issue of damages."); *United States ex rel. Maris Equip. Co. v. Morganti, Inc.,* 163 F.Supp.2d 174, 191 (E.D.N.Y.2001) ("Where the non-prevailing party has not formally moved for remittitur, a court may, *sua sponte,* offer the prevailing party the remittitur as an alternative to a new trial."); *Peterson v. County of Nassau,* 995 F.Supp. 305, 312 (E.D.N.Y.1998) ("A Court may, *sua sponte,* offer a remittitur as an alternative to a new trial.").

In New York State Courts, this additur procedure has been applied to a reapportionment of contributory negligence liability. In *Yalkut v. City of New York,* 162

A.D.2d 185, 557 N.Y.S.2d 3 (1st Dept. 1990), the First Department approved of a trial court's reapportionment of liability between the contributory negligence of the plaintiff and the negligence of the defendant, stating the following:

> Upon the plaintiff's motion to set aside so much of the verdict as found him negligent and apportioned his negligence at 75%, as against the weight of the evidence, the trial court ... granted the motion to the extent of setting aside that portion of the verdict which apportioned liability and directing a new trial on the issue unless the defendants consented to apportionment in the amount of 80% against the defendants and 20% against the plaintiff.

> \* \* \* \* \* \*

> Accordingly, we find that the trial court properly set aside, as against the weight of evidence, that part of the jury's verdict which apportioned the respective faults of the parties and *its order, which provides for an appropriate alternative, should be reinstated.*

162 A.D.2d at 187, 557 N.Y.S.2d 3 (emphasis added).

This is not the rule in the federal court. In *Akermanis v. Sea–Land Service, Inc.*, 688 F.2d 898, 902 (2d Cir.1982), a maritime case, it was held that while a trial judge may use the remittitur procedure to reduce excessive damages, this device should not be used to change the jury's determination of the percentage of responsibility attributable to the seaman's contributory negligence. The court explained:

> A conditional reduction of a damage calculation leaves in the judgment a portion of what the jury awarded, a circumstance that the Supreme Court considered crucial to its willingness to permit remittitur while rejecting additur in *Dimick.* In this case, however, the conditional adjustment of the contributory negligence percentage inserts into the judgment something beyond what the jury found: a conclusion that the plaintiff's negligence was responsible for a greater share of the accident than the jury had thought.

> \* \* \* \* \* \*

> [We agree] that a jury's apportionment of responsibility in a Jones Act case is not subject to adjustment by the device of a remittitur. 688 F.2d at 602.

In this case, if the Court had the power to issue a remittitur or additur in this case, it would set aside the contributory negligence apportionment of 90% on the part of the plaintiff. In addition, based on the evidence adduced at the trial, the Court would have reduced the plaintiff's contributory negligence share of the apportionment from 90% to 50%. However, in order to avoid the expense and delay of another trial, if both parties consent to this reduction, the case will be disposed of on these terms; namely the $190,000 verdict would be reduced by 50% to the sum of $95,000. In the absence of a consent by both parties to a reduction of the plaintiff's contributory negligence apportionment to 50%, the Court will set aside the contributory negligence apportionment pursuant to Rule 59 as a "seriously erroneous result" and will order a new trial solely on the issue of apportionment of liability between the parties.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the plaintiff's motion for judgment as a matter of law under Rule 50(b) is **DENIED**; and it is further

**ORDERED**, that the plaintiff's motion for a new trial pursuant to Rule 59 on the issue of the apportionment of liability between the parties is **GRANTED**; and it is further

ORDERED, in the alternative, the parties may consent to a reapportionment reducing the plaintiff's contributory negligence apportionment to 50%; and it is further

ORDERED, that if the parties do not consent to the reapportionment, the Court directs a new trial solely on the issue of apportionment of liability between the parties on July 22, 2003 at 9:00 a.m. to select a jury.

**SO ORDERED.**